**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARGARET MAZUR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 18-1018 |
| | ) | |
| **CITY OF PITTSBURGH, JASON** | ) | |
| **LANDO, and THOMAS NEE,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CONTI, Senior District Judge**

### I.     Introduction

Pro se plaintiff Margaret Mazur ("Mazur") initiated this case in the Allegheny County Court of Common Pleas by filing a complaint against the City of Pittsburgh and two officials of the City of Pittsburgh's police department—Jason Lando ("Lando") and Thomas Nee ("Nee")—(collectively "defendants"). Defendants removed the case to this court under 28 U.S.C. §1441(a). (ECF No. 1.) Defendants filed a motion for leave to file a motion to dismiss and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 3 and 10.)  The court, however, denied those motions as moot because Mazur's claims in the complaint did not arise under federal law, and, therefore, the court was without subject-matter jurisdiction over the case. (ECF No. 12.) The court granted Mazur leave to amend the complaint to state a cognizable claim under federal law. (Id. at 4.)

On January 21, 2019, Mazur filed an amended complaint. (ECF No. 15.) Mazur attempts to set forth claims under 42 U.S.C. § 1983 for violations of her rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, for violations of her rights guaranteed

by Section 1, Article 1 of the Pennsylvania Constitution, and for defamation under state law. (Id.) On February 24, 2019, defendants filed a motion to dismiss the amended complaint and a brief in support of the motion. (ECF No. 20 and 21.) On March 4, 2019, Mazur filed a response in opposition. (ECF No. 22.)

For the reasons set forth in this opinion, this court is without subject-matter jurisdiction over this case. Mazur in the amended complaint did not set forth factual allegations sufficient to state a plausible claim for relief under federal law. Because amendment would be futile the case will be forthwith remanded to the Allegheny County Court of Common Pleas and the motion to dismiss (ECF No. 20) denied as moot.

## II. Factual Allegations set forth in the Amended Complaint Accepted as True for the Purpose of Deciding the Motion to Dismiss

Mazur worked as a state employee and accounting assistant for the Southwestern Veterans Center ("SWVC") for five years. (ECF No. 15 ¶¶ 2-3.) She had a "good reputation" as an accounting assistant. (Id. ¶ 3.) Lando is the Commander of Zone 5 of the Pittsburgh Police Department and oversees the work of Nee, who is employed as a detective in Zone 5. (Id. ¶ 5.)

On May 16, 2018, $500.00 went missing from SWVC funds. (ECF No. 15 ¶ 12.) Two days later, on May 18, 2016, Barry Lowen ("Lowen") and Darren Lindsay ("Lindsay"), who are employed by the SWVC, initiated a police report of theft with respect to the missing $500.00. (ECF No. 15 ¶ 12.) Nee, who authored the police report, received information from Lowen and Lindsay. (Id.) Mazur was listed as "suspect #1" on the report. (Id.) Sharon Warden ("Warden") was listed as "number 2 suspect" on the police report. (Id. ¶ 14.) Because Lindsay and Lowen did not initiate the report until two days after the $500.00 went missing, Nee did not conduct an "immediate search [of the site of the alleged missing money] and interview of the suspects listed in the report." (Id. ¶ 12.)

According to Mazur, Nee provided "known false statements on or about May 25, 2016 to [the SWVC]…officials that he had enough evidence in his investigation…initiated on May 18, 2016….to arrest…Mazur for the crime of theft….and take her out of her workplace in handcuffs." (Id. ¶ 10.) Nee's police report reveals that he did not have any evidence upon which to arrest Mazur or refer the case for prosecution. (Id.) Mazur alleges that as a result of Nee's statements: (1) her reputation was destroyed; (2) she received a permanent letter of suspension for theft; (3) she lost her ten-year employment with the state (including benefits); and (4) her employment prospects are inhibited. (Id.)

On May 26, 2016, a "Pre-Disciplinary Conference" ("PDC") took place between Mazur and Kim Kreiser ("Kreiser"), the human resource analyst for the Department of Military and Veterans Affairs ("DMVA"). (ECF No. 15 ¶ 15.) Kreiser told Mazur that Nee reported to the SWVC that he "had enough evidence to charge…Mazur with theft." (Id.) Mazur asked the SWVC for the "evidence" referred to and relied upon by Nee. (Id.) The SWVC, however, did not provide to Mazur any "evidence" to support Nee's statements. (Id.) After the PDC, Jamie Cuthbert, a human resource analyst for the SWVC, "escorted…Mazur to her office and directed her to collect her belongings from her desk and office." (Id. ¶ 25.) Mazur was escorted from the building and instructed that she was not permitted on SWVC grounds. (Id.)

On the same day, the SWVC "charged" Mazur with "theft/stealing" and she was "immediately suspended without pay/terminated over the alleged missing $500.00…based upon…Nee's false statements to SWVC officials on or about May 25, 2016." (ECF No. 15 ¶ 13.) "SWVC took…Nee at his word that he had sufficient evidence to arrest…Mazur for theft…and take her out of her workplace in handcuffs." (Id.) Nee, however, did not interview or arrest Mazur or Warden. (Id.) Nee's police report, which was amended in February 2018, "gave

vague generalities in the narrative;" it did not provide "specific dates and times and did not record the details provided by SWVC officials as required by…[police] procedures." (ECF No. 15 ¶ 18.) In other words, Nee's police report did not contain "the required elements of what's supposed to be contained in a police report[,]" i.e., "Who, What, When, Where, Why and How." (ECF No. 15 ¶¶ 18, 32.) According to Lindsay, he spoke with Nee on two or three occasions, but Nee omitted that fact from his police report. (Id. ¶ 24.)

After Mazur learned that Nee's police report was amended, she contacted Lando and informed him that Nee had not interviewed her about the incident and requested that Nee interview her and prepare a supplemental report. (Id. ¶ 23.) Lando, however, informed Mazur that "it was too late to do that." (Id.) Mazur then went to the Zone 5 police station to request that she be arrested "so she could see and rebut the purported evidence that she could be arrested for the crime of theft." (Id. ¶ 26.) The police, including Nee and Lando, refused to arrest her. (Id.) According to Mazur, her due process rights were violated when she was denied the ability to "see and rebut" the evidence that Nee reported would support her arrest." (Id. ¶ 27.)

When the SWVC was informed that the Bureau of Pittsburgh Police had sufficient information to arrest Mazur and charge her with theft, the SWVC decided to internally handle the matter. (ECF No. 15 ¶ 21.) According to Mazur, the SWVC did not have the authority to handle the matter internally; rather, its choices were to not "charge…Mazur with theft and drop the charges or…[a]sk…Nee to proceed with an arrest of…Mazur." (Id. ¶ 22.)

"On or about June 2, 2016, in a meeting with SWVC and DMVA officials, the Commandant, Richard Adams, further decided and awarded additional discipline of a time served suspension and a final warning letter to…Mazur wherein she could be discharged/terminated again based on basically any reason." (ECF No. 15 ¶ 31.)

On or about July 17, 2016, Elizabeth Anderson, the "UC representative," stated that Mazur's dishonest act involved "theft/stealing from the Accounting department[,]" and, thus, Mazur's "UC Claim" was denied. (ECF No. 15 ¶ 33.) According to Mazur, but for Nee's allegedly defamatory statement about Mazur, she would have received her "UC benefits." (Id.) According to Mazur, Nee's statement that he had sufficient evidence to charge Mazur with theft caused Cuthbert, Kreiser, and Jennifer McClain-Miller, a human resource analyst at the DMVA, "to show contempt" to Mazur and harass her on the job. (ECF No. 15 ¶ 40.) Officials from the SWVC and the DMVA never reported to Nee that they saw Mazur steal the $500.00. (ECF No. 15 ¶ 45.)

Lando as the Commander of Zone 5, "is responsible for ensuring proper Police Conduct is followed by Police Officers and Detective under his command." (ECF No. 15 ¶ 47.) According to Mazur:

> Nee's superiors signed off on his inaccurate and unprofessional investigative work that did not meet any of the requirements of the police rules, policies and procedures. These actions by Detective Thomas Nee and Commander Lando's failure to act and correct the severe harm done to Margaret Mazur, once notified of the violations, shows deliberate indifference to the severe harm done to Margaret Mazur.

(ECF No. 15 ¶ 49.) Mazur alleges her due process rights were violated:

> Nee's failure to obtain and record complete and accurate information in Police Report #91034 has violated Margaret Mazur's U.S. Constitutional Right to protect her reputation, career and her livelihood and denied her of the opportunity to rebut Detective Thomas Nee's alleged statement(s) made in a May 25, 2016 conference call with SWVC/DMVA officials.

(Id. ¶ 51.) Mazur has "proof" that Lindsay and Lowen "knowingly gave false information to the police to place blame on…Mazur and protect…Warden." (Id.) "The absolute refusal of the Police Department or the City Solicitor to confirm or deny Detective Nee's alleged statements to show the truth continues to contribute to severe ongoing damages and loss of wages and reputation to

Margaret Mazur and appears to confirm that Detective Nee is guilty of making an unsupported statement." (ECF No. 15 ¶ 53.)

### III. Standard of Review

### A. Removal

To remove a case to federal district court under 28 U.S.C. § 1441—the general removal statute—a party must establish that the district court has original jurisdiction under either federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332, 1441. "Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162 (3d Cir. 2014) (quoting Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009)).

"Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). Therefore, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Id. (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). "That obligation extends to removal cases, as well as to those originally filed in the district courts." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002) (citing Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir.1999); Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila., 657 F.2d 29, 30 (3d Cir.1981)). Accordingly, a court must remand a removed case "if at any time before final judgment it appears that the district court lacks subject-matter jurisdiction." 28 U.S.C. § 1447(c).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."Id. at 679. See also Burch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere

> restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief. Connelly, 809 F.3d at 789; Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017).

Because plaintiff is proceeding pro se, the court will liberally construe her contentions and employ less stringent standards than when judging the work product of an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### IV. Discussion

Mazur in the amended complaint attempts to set forth plausible claims: (1) against Nee and Lando for violating 42 U.S.C. § 1983 by depriving her of her right to reputation under the Fourteenth Amendment to the United States Constitution; (2) against Lando for violating § 1983 by depriving her of her rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution; (3) against the City of Pittsburgh under Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); (4) against Nee and Lando for violating her rights guaranteed by Section 1, Article 1 of the Pennsylvania Constitution; and (5) against Nee for defamation under Pennsylvania state law. As the court previously explained to the parties, a case may not be removed to federal court unless the plaintiff's complaint establishes that the cases arises under federal law. (ECF No. 12 a 3-4 (quoting Franchise Tax Bd. of Cal. V. Constr.

Laborers Vacation Tr. For S. Cal., 463 U.S. 1, 10 (1983)). The court will, therefore, first determine whether Mazur stated a § 1983 claim against Nee, Lando, or the City of Pittsburgh over which this court would have subject-matter jurisdiction.

"Title 42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." DiBella v. Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). "To make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." See Groman v. Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983. This remedial statute does not create substantive rights. Maher v. Gagne, 448 U.S. 122, 129 n.11 (1980). "A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right." Ickes v. Borough of Bedford, 807 F.Supp.2d 306, 315 (W.D. Pa. 2011).

A review of the amended complaint and Mazur's response in opposition to the motion to dismiss shows that her § 1983 claims against Nee are based upon his statement that he had sufficient evidence to charge Mazur and arrest her for theft. Mazur alleges that Nee's statement, which was false, caused, among other things, harm to her reputation and loss of employment. Mazur's claims against Lando are based upon Lando's failure to supervise properly Nee, take corrective action against Nee's wrongful actions, or initiate disciplinary action against Nee. There can be no Monell claim under federal law against the City of Pittsburgh unless there is a federal claim against Lee or Lando. Brown v. Commw. of Pa., Dep't of Health Emergency Med. Servs.

Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) (""[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights."). Each of the purported federal claims will be addressed.

### A. Claim against Nee for Harm to Reputation under the Fourteenth Amendment

Mazur's claim against Nee based upon harm to her reputation is properly analyzed under the Fourteenth Amendment to the United States Constitution.[1] "[A]n individual has a protectable interest in reputation." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). Reputation alone, however, is not protected by the Due Process Clause of the Fourteenth Amendment. Id. (citing Versarge v. Township of Clinton, N.J., 984 F.2d 1359 (3d Cir. 1993)). To state a claim based upon deprivation of a liberty interest in reputation, a plaintiff must set forth factual allegations sufficient to show plausibly: (1) a "stigma" to his or her reputation; and (2) deprivation of some additional right or interest. Id. (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). The Third Circuit Court of Appeals refers to that two-part test[2]

---

[1]     Mazur also asserts her claims against Nee, Lando, and the City of Pittsburgh, who are all state actors, under the Fifth Amendment. The Fifth Amendment, however, "applies to actions of the federal government, not state actions." Brown v. City of Philadelphia Office of Human Res., No. CV 17-5410, 2018 WL 563161, at *2 (E.D. Pa. Jan. 24, 2018) (citing Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.11 (3d Cir. 2005)).

[2]     The Third Circuit Court of Appeals in Hill provided the following example of the application of the stigma-plus test:

>     In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The creation and dissemination of a false and

as the "stigma-plus" test. <u>Id</u> "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination [or deprivation of some additional right or interest] is the 'plus.'" <u>Id.</u> "When such a deprivation occurs, the employee is entitled to a name-clearing hearing." <u>Id.</u>

Here, even if Mazur set forth factual allegations sufficient to show plausibly that Nee publicly made a materially false stigmatizing statement about Mazur,[3] she did not set forth factual allegations sufficient to show that she suffered a constitutional deprivation as a result of that statement. To satisfy a plaintiff's pleading burden with respect to the second requirement of the stigma-plus test, the plaintiff must set forth factual allegations sufficient to show plausibly he or

---

defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

<u>Hill</u>, 455 F.3d at 236.

[3]     The court need not address whether Mazur set forth factual allegations sufficient with respect to the first element of the stigma-plus test because the court finds that Mazur did not set forth factual allegations to show plausibly that Nee's conduct caused her a constitutional deprivation for which she is entitled to relief under § 1983. An argument may be made, however, that the allegations in the amended complaint do not show plausibly that Nee's statement that he had sufficient evidence, i.e., probable cause, to arrest Mazur was materially false. See <u>Swope v. Pittsburgh</u>, 90 F. Supp. 3d 400, 408 (W.D. Pa. 2015) ("Defendants had no duty to continue to investigate before seeking an arrest warrant once they had probable cause to believe Mr. Swope had committed the robberies."); <u>Amrine v. Brooks</u>, No. 04-4300-CV-C-NKL, 2007 WL 1309563, at *1 (W.D. Mo. May 4, 2007), <u>aff'd</u>, 522 F.3d 823 (8th Cir. 2008) ("The Court is unaware of any authority, and Amrine does not cite any, which stands for the proposition that probable cause cannot exist simultaneously as to two different suspects."); <u>Wright v. Phila.</u>, 409 F.3d 595, 603 (3d Cir. 2005) ("The probable cause inquiry…does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate."); <u>Walker v. Spiller</u>, 54 F.Supp.2d 421, 426 (E.D.Pa.1999) (quoting <u>Romero v. Fay</u>, 45 F.3d 1472, 1477-78 (10th Cir. 1995) ("A police officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of showing that the [officer's] initial probable cause determination was itself unreasonable.")); <u>Commw. v. Chase</u>, 575 A.2d 574, 578 (Pa. Super. Ct. 1990) ("We do not agree that the police could never have probable cause to arrest two persons if only one person has committed the crime….Under some circumstances, there may be probable cause to believe that either of two suspects was the perpetrator of the criminal act.").

she was deprived of some additional right or interest, e.g., a loss of employment (regardless whether the plaintiff had a property interest in the employment under applicable state law). Hill, 455 F.3d at 238. The defamation must "'be accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some third party[.]'" D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield, 552 F. App'x 110, 114 (3d Cir. 2014) (quoting WMX Techs., Inc. v. Miller, 80 F.3d 1315, 1320 (9th Cir.1996)).

Mazur set forth factual allegations to show plausibly that SWVC officials suspended her without pay. (ECF No. 15 ¶ 22.) Mazur, however, does not allege a deprivation of a right or interest ***directly*** caused by Nee or the City of Pittsburgh; indeed, the SWVC—and not the City of Pittsburgh—was Mazur's employer who directly caused her injury, i.e., suspension without pay and the placement of the suspension letter in her personnel file. As discussed above, a plaintiff who successfully establishes a right to relief is entitled to a name-clearing hearing to remedy the wrongs caused by the defamatory statement. In this case, to remedy the wrongs complained of by Mazur, she requires a name-clearing hearing from the SWVC and not the City of Pittsburgh. In other words, because Nee did not file criminal charges against Mazur, only the SWVC "was in a position to provide Plaintiff with due process in conjunction with the deprivation of …[her] employment interests." Grimm v. City of Uniontown, No. CIV. A. 06-1050, 2008 WL 282344, at *30 (W.D. Pa. Jan. 31, 2008).

In Grimm, the plaintiff was employed by the United States Army. Id. at *27. He sued a police department, its chief, and two officers under § 1983 for, among other things, violating his Fourteenth Amendment right to procedural due process with respect to his liberty interest in his reputation in connection with events that occurred when he was arrested by the officers outside a social establishment for public intoxication and disorderly conduct. Id. at *1. The citations issued

by one of the officers to the plaintiff, however, were eventually withdrawn. Id. at *11. The plaintiff as a result of the arrest suffered various adverse employment actions in relation to his job in the Army. Id. at *1. The defendants filed a motion for summary judgment. The court held that the plaintiff failed to satisfy his burden with respect to his § 1983 claim based upon the deprivation of his liberty interest in his reputation because he did not adduce evidence to show that the Army's adverse employment actions against him were sufficient to satisfy the "plus" requirement of the stigma plus test. Id. at *30.

The court, however, also recognized:

Plaintiff…[did] not address…a fundamental distinction between the facts of this case and the facts of the cases cited above: the identity of the defendant responsible for the action taken. In all of the Supreme Court and Third Circuit cases, a government employer defamed an employee in the process of taking an adverse action against him. Here, by contrast, Plaintiff has alleged that the named Defendants (the City of Uniontown, its police department and three individual officers) defamed him, which induced his employer (the United States Army) to take certain adverse employment actions against him. The Defendants in this case were not in a position to take any adverse employment action against Plaintiff because they did not employ him and the entity that did (the Army, which is a governmental employer, although not a "state actor") is not named as a defendant in this case. Plaintiff has not cited (and this Court has not found) a single case in which the factual scenario described in this case was found to state a claim for procedural due process with respect to a liberty interest.

Grimm, 2008 WL 282344, at *30. The court emphasized that "[o]nly the Army was in a position to provide Plaintiff with due process in conjunction with the deprivation of his employment interests" and the defendants "had no control" over the actions of the Army. Id. The court on that basis granted summary judgment in favor of the defendants with respect to his § 1983 procedural due process claim. Id.

Similarly, in this case,[4] Mazur seeks relief from the incorrect entity. Mazur alleges that Nee made a stigmatizing statement about her to her employer. The harm of which she complains, however, was caused by the SWVC's adverse employment actions against her. While the SWVC officials may have relied upon Nee's statement in order to discipline Mazur, neither Nee nor the City of Pittsburgh had any control over the conduct of the SWVC. To the extent Mazur is entitled to a name-clearing hearing, only the SWVC is in the position to provide that relief to her and remedy its alleged wrongs. Thus, even if Mazur could show plausibly that Nee's statement to the SWVC that he had sufficient evidence to arrest Mazur was materially false, her claim against him would fail. In light of the specificity of Mazur's allegations, the court cannot discern any amendment which would state a federal claim. In other words, any further attempt to correct the complaint would be futile. Fed. R. Civ. P. 15(a); Kissell v. Dep't of Corr., 634 F. App'x 876, 879 (3d Cir. 2015) ("Because Kissell's claims as to that award could not be brought by a separate action, amendment would have been futile and dismissal with prejudice was proper."); Johnson v. Johnson, No. CIV.A. 15-20, 2015 WL 5286520, at *3 (W.D. Pa. Sept. 10, 2015) (dismissing the plaintiff's claims with prejudice where amendment would be futile).

**B. Claim Against Lando for Failing to Correct or Clarify Nee's Defamatory Statement**

Mazur attempts to assert a § 1983 claim against Lando, as Nee's supervisor, for failing to "correct or clarify Detective Nee's alleged damaging statement which contributed" to Mazur's harm. (ECF No. 15 ¶ 48.) To render Lando personally liable for constitutional violations under § 1983, Mazur will be required to prove Lando: (1) participated in violating Mazur's constitutional rights; (2) directed Nee to violate her constitutional rights; (3) knew of and acquiesced in Nee's

---

[4] The undersigned judge is also presiding over Civil Action No. 17-826 in which Mazur is suing the SWVC and the DMVA for employment discrimination.

violation of her rights; or (4) knew of and tolerated past or ongoing misbehavior. Jacobs v. City of Pittsburgh, Civ. A. No. 08–470, 2010 WL 3397525, at *1 (W.D. Pa. June 21, 2010), report and recommendation adopted, 2010 WL 3397523 (W.D. Pa. Aug. 26, 2010) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190–91, 1191 n. 3 (3d Cir.1995)). In any event, Mazur must prove Nee violated her constitutional rights in order to hold Lando liable for his role in that violation. Tamez v. Manthey, 589 F.3d 764, 772 (5th Cir. 2009) ("[S]upervisor liability requires an underlying constitutional violation before such liability can be imposed."); Smith v. Erie Cty. Sheriff's Dep't, 603 F. App'x 414, 423 (6th Cir. 2015); Neuburger v. Thompson, 305 F. Supp. 2d 521, 534 (W.D. Pa. 2004), aff'd, 124 F. App'x 703 (3d Cir. 2005); Taylor v. Garwood, 98 F. Supp. 2d 672, 680 (E.D. Pa. 2000), aff'd, 275 F.3d 38 (3d Cir. 2001). Because Mazur did not set forth factual allegations sufficient to show plausibly that Nee violated her procedural due process rights with respect to her liberty interest in reputation, her claim against Lando for his supervisory role in that violation must also fail. Like with respect to Mazur's claim against Nee, any further attempt to amend the complaint with respect to her claim against Lando would be futile.

### C. Claim against the City of Pittsburgh under Monell

In a § 1983 action, a municipality may be held directly liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Monell, 436 U.S. at 694. As discussed above, "for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights." Brown, 318 F.3d at 482. Mazur alleges that the City of Pittsburgh's "refusal…to confirm or deny…Nee's statements to show the truth" caused Mazur's ongoing damages. (ECF No. 15 ¶ 53.) Mazur, however, failed to set forth factual allegations to show plausibly in the first instance that her procedural due process rights were violated. Thus, her

<u>Monell</u> claim against the City of Pittsburgh must fail. Because any further amendment to the complaint with respect to her claims against Nee and Lando would be futile, any attempt to further amend the claims against the City of Pittsburgh would also be futile.

### D. Conclusion with Respect to Federal Claims

Mazur in the amended complaint did not set forth any plausible claims for relief under federal law. This court, therefore, lacks subject-matter jurisdiction over this case. The court will not address her state law claims. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); <u>Bromwell v. Michigan Mut. Ins. Co.</u>, 115 F.3d 208, 213 (3d Cir.1997) (explaining that the language of § 1447(c) is "mandatory—once the federal court determines that it lacks jurisdiction, it must remand the case back to the appropriate state court."); <u>Wotring v. Stuski</u>, No. 1:14-CV-1843, 2015 WL 4478775, at *4 (M.D. Pa. July 22, 2015) (explaining that although the plaintiffs asserted state law claims, the court did not address the state law claims because the court lacked "independent subject matter jurisdiction" over the state law claims); <u>In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.</u>, No. 04-3329, 2006 WL 1531152, at *1 (E.D. Pa. June 2, 2006) ("Because RICO is the basis of the Court's subject matter jurisdiction, the Court will not address the plaintiffs' state law claims at this time."). The case will be forthwith remanded to the Allegheny County Court of Common Pleas.

### V. Conclusion

The City of Pittsburgh, who is not Mazur's employer, cannot provide her the remedy she seeks, which is, among other things, a name-clearing hearing. Based upon the allegations in the amended complaint, Mazur cannot show under federal law that she is entitled to relief from Nee, Lando, or the City of Pittsburgh. Under those circumstances, this court is without subject-matter

jurisdiction over this case and further amendment would be futile. FED. R. CIV. P. 15(a); Kissell v. Dep't of Corr., 634 F. App'x 876, 879 (3d Cir. 2015) ("Because Kissell's claims as to that award could not be brought by a separate action, amendment would have been futile and dismissal with prejudice was proper."); Johnson v. Johnson, No. CIV.A. 15-20, 2015 WL 5286520, at *3 (W.D. Pa. Sept. 10, 2015) (dismissing the plaintiff's claims with prejudice where amendment would be futile). The case will be forthwith remanded to the Allegheny County Court of Common Pleas. The motion to dismiss (ECF No. 20) will be denied as moot.

       An appropriate order will be entered.

                                  BY THE COURT,

Dated: July 12, 2019                        /s/ JOY FLOWERS CONTI
                                  Joy Flowers Conti
                                  Senior United States District Court Judge